**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| PENINSULA TECHNOLOGIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 2:26-cv-283 |
| v. | § | |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| AT&T MOBILITY LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Peninsula Technologies, LLC ("Peninsula") files this Complaint against Defendant AT&T Mobility LLC ("AT&T" or "Defendant") for infringement of U.S. Patent No. 11,122,470 (the "'470 Patent"), U.S. Patent No. 11,197,273 (the "'273 Patent"), U.S. Patent No. 11,570,668 (the "'668 Patent"), and U.S. Patent No. 11,800,521 (the "'521 Patent"), collectively, the "Asserted Patents."

**THE PARTIES**

1.     Peninsula Technologies, LLC is a Texas limited liability company, with a principal place of business at 812 West McDermott Dr. #1037, Allen, TX 75013.

2.     On information and belief, AT&T Mobility LLC is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319. AT&T is doing business, either directly or through its agents, on an ongoing basis in this judicial district and elsewhere in the United States, and has a regular and established place of business in this judicial district. AT&T is registered to do business in Texas and may be served through its registered agent, The Corporation Trust

Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 and C T Corporation System, 1999 Bryan Street Suite 900, Dallas, Texas 75201.

3.     AT&T, either itself and/or through the activities of its subsidiaries, makes, uses, sells, offers for sale, and/or imports throughout the United States, including within this District, products and services that infringe the Asserted Patents and/or uses methods covered by the Asserted Patents in the United States as further described below.

## JURISDICTION AND VENUE

4.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.     This Court has specific and general personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, *inter alia*, (i) Defendant has engaged in continuous, systematic, and substantial business in Texas; (ii) Defendant is registered to do business in Texas; (iii) Defendant maintains regular and established places of business in this District; (iv) Defendant has committed and continues to commit, acts of patent infringement in this State and in this District. Such acts of infringement include the making, using, and selling of cellular services that leverage and infringe the inventions of the Asserted Patents (as more particularly identified and described throughout this Complaint, below) in this State and this District.

6.     Defendant maintains a "regular and established" place of business in this district, including by (a) maintaining or controlling retail stores in this district and (b) maintaining and operating infringing base stations in this district, including on cellular towers and other installation sites owned or leased by Defendant. Defendant's significant physical presence in this District

includes, but not limited to, ownership of or control over property, inventory, or infrastructure. For example, Defendant maintains retail stores located at 4757 South Broadway Avenue, Tyler, Texas 75703; 2028 Southeast Loop #323, Tyler, Texas 75701; and 8922 South Broadway Avenue, Tyler, Texas 75703 (among others), all of which lie within this federal judicial district.

7.      In addition, Defendant has derived substantial revenues from its infringing acts occurring within this State and this District. It has substantial business in this State and this District, including: (i) at least part of its infringing activities alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods and services provided to Texas residents. Defendant derives benefits from its presence in this federal judicial district, including, but not limited to, sales revenue and serving customers using its mobile network in this District. For example, Defendant receives revenue from its corporate stores in this District and through its website (att.com), by selling network access, phones, and services, and by receiving payment from customers in this District for network access, phones, and services.

8.      Defendant has, thus, in the many ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over it. Indeed, Defendant has sufficient minimum contacts with this forum through its transaction of substantial business in this State and this District and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

9.      Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1400(b) because, among other things, (i) Defendant is subject to personal jurisdiction in this District; (ii) Defendant has committed acts of patent infringement in this District; and (iii) Defendant has

regular and established places of business in this District. Defendant maintains "regular and established" places of business in this district, including the numerous retail stores in this District through which it transacts business.

## BACKGROUND

10. On information and belief, AT&T is one of the top three largest mobile network operators (MNO) in the United States and serves more than 118 million subscribers. *See* https://investors.att.com/~/media/Files/A/ATT-IR-V2/financial-reports/quarterly-earnings/2025/2Q-2025/2Q25_ATT_Financial_and_Operational_Schedules_and_Non_GAAP_Reconciliations.pdf (at p. 6).

11. AT&T's mobile network contains its own core network and over 70,000 active cell sites (i.e., base stations). *See* https://www.steelintheair.com/att/; *see also* https://about.att.com/sites/labs/our-work/5g-beyond.

12. AT&T's 4G and 5G mobile networks are 3GPP compliant and include (or are rolling out) 3GPP Release 15, Release 16, and Release 17 features. *See, e.g.,* https://www.fierce-network.com/wireless/industry-voices-lowenstein-at-t-5g-launch-a-large-commercial-test; *see also* https://www.prnewswire.com/news-releases/att-makes-worlds-first-standards-based-mobile-5g-millimeter-wave-connection-300709700.html; *see also* https://techblog.comsoc.org/2019/12/16/att-and-verizon-to-use-integrated-access-and-backhaul-for-2021-5g-networks/; *see also* https://www.rcrwireless.com/20250717/internet-of-things/att-intros-5g-redcap; *see also* https://www.mobileworldlive.com/att/att-pushes-redcap-nationwide-to-200m-pops/; *see also* https://about.att.com/blogs/2023/standalone-5g-innovations.html; *see also* https://sustainability.att.com/priority-topics/network-resilience.

## THE ASSERTED PATENTS

13.     Peninsula is the sole and exclusive owner of all right, title, and interest in the Asserted Patents and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the Asserted Patents, including the filing of this patent infringement lawsuit. Peninsula also has the right to recover all damages for past, present, and future infringements of the Asserted Patents and to seek injunctive relief as appropriate under the law.

14.     The '470 Patent is entitled, "Network slice information for handover procedure." The '470 Patent lawfully issued on September 14, 2021, and stems from U.S. Patent Application No. 15/972,037 filed on May 4, 2018.

15.     The '273 Patent is entitled, "Cell information for access management." The '273 Patent lawfully issued on December 7, 2021, and stems from U.S. Patent Application No. 17/109,558 filed on December 2, 2020.

16.     The '668 Patent is entitled, "Release of a second session of a wireless device by an access and mobility management function." The '668 Patent lawfully issued on January 31, 2023, and stems from U.S. Patent Application No. 16/990,529 filed on August 11, 2020.

17.     The '521 Patent is entitled, "Cell configuration." The '521 Patent lawfully issued on October 24, 2023, and stems from U.S. Patent Application No. 17/536,747, which was filed on November 29, 2021.

18.     Peninsula and its predecessors complied with the requirements of 35 U.S.C. § 287, to the extent necessary, such that Peninsula may recover pre-suit damages for the Asserted Patents.

19.     The claims of the Asserted Patents are directed to patent eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by the claims comprise systems and/or consist of ordered combinations of features and functions that,

at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

## NOTICE

20. By letter delivered February 10, 2025, as well as through other correspondence and communications with AT&T prior to the filing of this Complaint, Peninsula via its licensing agent notified AT&T of the Asserted Patents and its infringement, provided claim identifying exemplary infringed claims and exemplary infringing AT&T products and services, and invited AT&T to proceed with a licensing discussion with Peninsula.

21. More specifically, claim charts for the '470 Patent, '668 Patent, and '521 Patent identifying exemplary infringed claims and exemplary infringing AT&T products and services were made available for download in a private data room on February 24, 2025. The private data room was accessed and files were downloaded by AT&T via an IP address in Alpharetta, Georgia on February 24, 2025 and again via an IP address in Plano, TX on March 12, 2025.

## COUNT I
### (INFRINGEMENT OF U.S. PATENT NO. 11,122,470)

22. Plaintiff incorporates the preceding paragraphs herein by reference.

23. Peninsula is the assignee of the '470 Patent, with ownership of all substantial rights, title, and interest in and to the '470 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

24. The '470 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on September 14, 2021, after full and fair examination.

25.    Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 1[1] of the '470 Patent in this District and elsewhere in Texas and the United States through the provisioning and operation of a cellular network and/or by making, using (including by testing in this District and elsewhere in the United States), selling, offering to sell, and/or importing equipment and software that incorporate the fundamental technologies covered by the '470 Patent. Such infringement includes, but is not limited to, the making, using, offering to sell, and selling of cellular services, networks, equipment, products, and/or software that leverage and infringe the inventions of the '470 Patent, and Defendant performing methods covered by the inventions of the '470 Patent (including by testing in this District and elsewhere in the United States). AT&T's 5G cellular network includes base station equipment configured to support 5G communications (collectively, the "'470 Accused Instrumentalities"). The '470 Accused Products are configured to operate, and do operate, according to 3GPP/ETSI[2] standards and, as illustrated below, support and implement network slicing techniques covered by the '470 Patent.

26.    By way of illustration only, Defendant's '470 Accused Instrumentalities comprise each and every element of claim 1 of the '470 Patent. The '470 Accused Instrumentalities perform "[a] method comprising: receiving, by a first base station from a core network entity, a first message indicating a request for session resources for a wireless device, wherein the session resources are for a first network slice." *See supra.*, ¶¶ 11-12 (showing AT&T operates a 3GPP 5G network which comprises base stations, i.e., Next Generation Node Bs (gNBs)). For example, the

---

[1] Throughout this Complaint, wherever Peninsula identifies specific claims of the Asserted Patents infringed by Defendant, Peninsula expressly reserves the right to identify additional claims and products in its infringement contentions in accordance with applicable local rules and the Court's case management order. Specifically identified claims throughout this Complaint are provided for notice pleading only.

[2] Evidence cited to herein refers to standards governed by ETSI and 3GPP. The disclosures of the ETSI standards are the same or substantially the same as the disclosures of the 3GPP standards, thus, ETSI and 3GPP standards can be relied on interchangeably, particularly for a notice pleading.

'470 Accused Instrumentalities include a first base station (Source NG-RAN), i.e., Next Generation NodeB (gNB), receiving from an Access and Mobility Management Function (AMF) a *PDU Session Resource Setup Request* message during a packet data unit (PDU) session set up for a user equipment (UE) which contains an *S-NSSAI* information element (IE) identifying the network slice requested by the UE:[3]

### 8.2.1.1    General

The purpose of the PDU Session Resource Setup procedure is to assign resources on Uu and NG-U for one or several PDU session resources and the corresponding QoS flows, and to setup corresponding Data Radio Bearers for a given UE. The procedure uses UE-associated signalling.

### 8.2.1.2    Successful Operation



**Figure 8.2.1.2-1: PDU session resource setup: successful operation**

The AMF initiates the procedure by sending a PDU SESSION RESOURCE SETUP REQUEST message to the NG-RAN node.

The PDU SESSION RESOURCE SETUP REQUEST message shall contain the information required by the NG-RAN node to setup the PDU session related NG-RAN configuration consisting of at least one PDU session resource and include each PDU session resource to setup in the *PDU Session Resource Setup Request List* IE.

---

[3] *See, e.g.,* ETSI TS 138 413 V15.0.0 (2018-07); *see also* 3GPP TS 38.413 V15.0.0 (2018-06).

### 9.2.1.1    PDU Session Resources To Be Setup List

This IE contains PDU session resource related information used at UE context transfer between NG-RAN nodes.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| PDU Session Resources To Be Setup List | | 1 | | | – | |
| >PDU Session Resources To Be Setup Item | | 1 .. <maxnoof PDU sessions > | | | – | |
| >>PDU Session ID | M | | 9.2.3.18 | | – | |
| >>S-NSSAI | M | | 9.2.3.21 | | – | |
| >>PDU Session Resource Aggregate Maximum Bitrate | O | | PDU Session Aggregate Maximum Bit Rate 9.2.3.69 | This IE shall be present when at least one Non-GBR QoS Flow has been setup. | – | |
| >>UL NG-U UP TNL Information at UPF | M | | UP Transport Layer Information 9.2.3.30 | UPF endpoint of the NG-U transport bearer. For delivery of UL PDUs | – | |
| >>Source DL NG-U TNL Information | O | | UP Transport Layer Information 9.2.3.30 | Indicates the possibility to keep the NG-U GTP-U tunnel termination point at the target NG-RAN node. | – | |
| >>Security Indication | O | | 9.2.3.52 | | – | |
| >>PDU Session Type | M | | 9.2.3.19 | | – | |
| >>Network Instance | O | | 9.2.3.85 | This IE is ignored if the Common Network Instance IE is present. | – | |

S-NG-RAN node    Secondary NG-RAN node
SNPN            Stand-alone Non-Public Network
S-NSSAI         Single Network Slice Selection Assistance Information
TAC             Tracking Area Code

27.    The '470 Accused Instrumentalities perform a method comprising "initiating, by the first base station and based on the requested session resources for the first network slice not being available for the wireless device at the first base station, a handover for the wireless device towards a first cell of a second base station; [and] sending, to the second base station and based on the initiating, a second message indicating a handover request." For example, upon determining that the resources necessary to serve the requested network slice are unavailable, the source NG-RAN (i.e., first base station) of the '470 Accused Instrumentalities will gather the information

9

required to construct a handover request and send the resulting *Handover Request* message (i.e., a

second message indicating a handover request) to the target NG-RAN (i.e., second base station):[4]

### 9.1.1.1    HANDOVER REQUEST

This message is sent by the source NG-RAN node to the target NG-RAN node to request the preparation of resources for a handover.

Direction: source NG-RAN node → target NG-RAN node.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| Message Type | M | | 9.2.3.1 | | YES | reject |
| Source NG-RAN node UE XnAP ID reference | M | | NG-RAN node UE XnAP ID 9.2.3.16 | Allocated at the source NG-RAN node | YES | reject |
| Cause | M | | 9.2.3.2 | | YES | reject |
| Target Cell Global ID | M | | 9.2.3.25 | Includes either an E-UTRA CGI or an NR CGI | YES | reject |
| GUAMI | M | | 9.2.3.24 | | YES | reject |

### 9.3.1.2    Cause

The purpose of the *Cause* IE is to indicate the reason for a particular event for the NGAP protocol.

| | | | |
|---|---|---|---|
| >>Radio Network Layer Cause | M | | ENUMERATED (Unspecified, TXnRELOCOverall expiry, Successful handover, Release due to NG-RAN generated reason, |

| | | |
|---|---|---|
| User inactivity, Radio connection with UE lost, Radio resources not available, Invalid QoS combination, | | |

---

[4] *See, e.g.,* ETSI TS 138 423 V15.16.0 (2022-10) (showing the *Handover Request* message from the source NG-RAN to the target NG-RAN contains a *Cause* IE which contains a *Radio Network Layer Cause* IE which contains information on whether network resources such as network slices are unavailable/unsupported); *see also* 3GPP TS 38.423 V15.16.0 (2022-09).

UP confidentiality protection not
possible,
Slice(s) not supported,
UE in RRC_INACTIVE state not
reachable,

28.    The '470 Accused Instrumentalities perform a method comprising sending, to the second base station and based on the initiating, a second message indicating a handover request, "the second message comprising: a packet flow identifier of a packet flow associated with the first network slice; a network slice identifier of the first network slice for the handover request; and a cause information element indicating that a cause for the handover request is that the requested session resources are not available, at the first base station, for the first network slice identified by the network slice identifier." For example, the *Handover Request* message (i.e., second message indicating a handover request) includes a *PDU Session ID* IE, an associated *S-NSSAI* IE which identifies the requested network slice, and a *Cause* IE indicating the cause for the handover request is that resources necessary to support the requested network slice are unavailable:[5]

## 5.6    Session Management

### 5.6.1    Overview

The 5GC supports a PDU Connectivity Service i.e. a service that provides exchange of PDUs between a UE and a data network identified by a DNN. The PDU Connectivity Service is supported via PDU Sessions that are established upon request from the UE.

### 9.2.1.1    PDU Session Resources To Be Setup List

This IE contains PDU session resource related information used at UE context transfer between NG-RAN nodes.

---

[5] *See, e.g.,* ETSI TS 123 501 V15.13.0 (2022-03); *see also* ETSI TS 138 423 V15.16.0 (2022-10) (showing the PDU Session Resources To Be Setup List transferred between NG-RAN nodes contains a *PDU Session ID* IE and *S-NSSAI* IE; showing the *Handover Request* message from the source NG-RAN to the target NG-RAN contains a *Cause* IE which contains a *Radio Network Layer Cause* IE which contains information on whether network resources such as network slices are unavailable/unsupported); *see also* 3GPP TS 23.501 V15.13.0 (2022-03); *see also* 3GPP TS 38.423 V15.16.0 (2022-09).

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| PDU Session Resources To Be Setup List | | 1 | | | – | |
| >PDU Session Resources To Be Setup Item | | 1 .. <maxnoof PDU sessions > | | | – | |
| >>PDU Session ID | M | | 9.2.3.18 | | – | |
| >>S-NSSAI | M | | 9.2.3.21 | | – | |

### 9.1.1.1    HANDOVER REQUEST

This message is sent by the source NG-RAN node to the target NG-RAN node to request the preparation of resources for a handover.

Direction: source NG-RAN node → target NG-RAN node.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| Message Type | M | | 9.2.3.1 | | YES | reject |
| Source NG-RAN node UE XnAP ID reference | M | | NG-RAN node UE XnAP ID 9.2.3.16 | Allocated at the source NG-RAN node | YES | reject |
| Cause | M | | 9.2.3.2 | | YES | reject |
| Target Cell Global ID | M | | 9.2.3.25 | Includes either an E-UTRA CGI or an NR CGI | YES | reject |
| GUAMI | M | | 9.2.3.24 | | YES | reject |

### 9.3.1.2    Cause

The purpose of the *Cause* IE is to indicate the reason for a particular event for the NGAP protocol.

| | | | |
|---|---|---|---|
| >>Radio Network Layer Cause | M | | ENUMERATED (Unspecified, TXnRELOCOverall expiry, Successful handover, Release due to NG-RAN generated reason, |
| | | | User inactivity, Radio connection with UE lost, Radio resources not available, Invalid QoS combination, |
| | | | UP confidentiality protection not possible, Slice(s) not supported, UE in RRC_INACTIVE state not reachable, |

12

29.    The '470 Accused Instrumentalities perform a method comprising "receiving, from the second base station, a third message indicating an acceptance or a rejection based on the second message." For example, the source NG-RAN (i.e., first base station) of the '470 Accused Instrumentalities receives a *Handover Request Acknowledgement* or *Handover Preparation Failure* message from the target NG-RAN (i.e., second base station) which indicates either an acceptance or rejection of the handover request, respectively:[6]

### 9.1.1.2    HANDOVER REQUEST ACKNOWLEDGE

This message is sent by the target NG-RAN node to inform the source NG-RAN node about the prepared resources at the target.

Direction: target NG-RAN node → source NG-RAN node.

### 9.1.1.3    HANDOVER PREPARATION FAILURE

This message is sent by the target NG-RAN node to inform the source NG-RAN node that the Handover Preparation has failed.

Direction: target NG-RAN node → source NG-RAN node.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| Message Type | M | | 9.2.3.1 | | YES | reject |
| Source NG-RAN node UE XnAP ID | M | | NG-RAN node UE XnAP ID 9.2.3.16 | Allocated at the source NG-RAN node | YES | ignore |
| Cause | M | | 9.2.3.2 | | YES | ignore |
| Criticality Diagnostics | O | | 9.2.3.3 | | YES | ignore |

30.    Defendant has committed the foregoing infringing activities without a license.

31.    Peninsula has been damaged as a result of Defendant's infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

---

[6] *See, e.g.,* ETSI TS 138 423 V15.16.0 (2022-10); *see also* 3GPP TS 38.423 V15.16.0 (2022-09).

32.     Despite having knowledge of the '470 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '470 Patent, Defendant has nevertheless continued its infringing conduct and has disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '470 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Peninsula's rights with respect to the '470 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT II
(INFRINGEMENT OF U.S. PATENT NO. 11,197,273)

33.     Plaintiff incorporates the preceding paragraphs herein by reference.

34.     Peninsula is the assignee of the '273 Patent, with ownership of all substantial rights, title, and interest in and to the '273 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

35.     The '273 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on December 7, 2021, after full and fair examination.

36.     Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 9 of the '273 Patent in this District and elsewhere in Texas and the United States through the provisioning and operation of a cellular network and/or by making, using, selling, offering to sell, and/or importing equipment and software that incorporate the fundamental technologies covered by the '273 Patent. Such infringement includes, but is not limited to, the making, using (including by testing in this District and elsewhere in the United States), offering to sell, and selling of cellular services, networks, equipment, products, and/or software that leverage and infringe the inventions of the '273 Patent, and Defendant performing methods covered by the inventions of the '273 Patent (including by testing in this District and elsewhere in the United States). AT&T's 5G cellular

14

network includes base station equipment configured to support 5G communications (collectively, the "'273 Accused Instrumentalities"). The '273 Accused Products are configured to operate, and do operate, according to 3GPP/ETSI standards and, as illustrated below, support Non-Public Networks (NPN) uses covered by the '273 Patent.

37.     By way of illustration only, Defendant's '273 Accused Instrumentalities comprise each and every element of claim 9 of the '273 Patent. The '273 Accused Instrumentalities comprise "[a] base station distributed unit comprising: one or more processors; and memory storing instructions that, when executed by the one or more processors, cause the base station distributed unit to: receive, from a base station central unit, a first indication that a cell is associated with a first non-public network (NPN)." *See supra.*, ¶¶ 11-12 (showing AT&T operates a 3GPP 5G network which comprises base stations, i.e., Next Generation Node Bs (gNBs)). For example, the '273 Accused Instrumentalities include a base station, i.e., Next Generation NodeB (gNB), that contains a base station distributed unit (gNB-DU) having instruction stored in memory that, when executed by a processor, cause the gNB-DU to receive from a base station central unit (gNB-CU) a *GNB-DU Configuration Update Acknowledge* message which includes an *Available SNPN ID List* information element (IE) which indicates the cell is associated with a first non-public network (NPN) (i.e., a first indication that a cell is associated with a first non-public network NPN):[7]

---

[7] *See, e.g.,* ETSI TS 138 473 V16.14.0 (2023-07); *see also* 3GPP TS 38.473 V16.14.0 (2023-06).

### 9.2.1.8    GNB-DU CONFIGURATION UPDATE ACKNOWLEDGE

This message is sent by a gNB-CU to a gNB-DU to acknowledge update of information associated to an F1-C interface instance.

NOTE:    If F1-C signalling transport is shared among several F1-C interface instances, this message may transfer updated information associated to several F1-C interface instances.

Direction: gNB-CU → gNB-DU

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| Message Type | M | | 9.3.1.1 | | YES | reject |
| Transaction ID | M | | 9.3.1.23 | | YES | reject |
| Cells to be Activated List | | 0.. 1 | | List of cells to be activated | YES | reject |
| >Cells to be Activated List Item | | 1.. <maxCelli ngNBDU> | | | EACH | reject |

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| >>Available SNPN ID List | O | | 9.3.1.163 | Indicates the available SNPN ID list. If this IE is included, the content of the *Available PLMN List* IE and *Extended Available PLMN List* IE if present in the *Cells to be Activated List Item* IE is ignored. | YES | ignore |

38.    The '273 Accused Instrumentalities comprise a base station distributed unit comprising one or more processors, and memory storing instructions that, when executed by the one or more processors, cause the base station distributed unit to "transmit, via the cell, a second indication that the cell is associated with the first NPN." For example, the gNB-DU of the '273 Accused Instrumentalities transmits on the Broadcast Control Channel (BCCH) (i.e., via the cell) a System Information Block 1 (*SIB1*) message which includes a *cellAccessRelatedInfo* IE which contains an *npn-IdentityInfoList* IE which contains an *NPN-IdentityInfo* field which contains an *NPN-IdentityList* field which contains an *NPN-Identity* IE which contains an *snpn* field, which

contains a *nid-List* field which contains a NID which, combined with a PLMN ID, identifies an

SNPN (i.e., a second indication that the cell is associated with the first NPN):[8]

## 5.2.2   System Information management function

Scheduling of system broadcast information is carried out in the gNB-DU. The gNB-DU is responsible for transmitting the system information according to the scheduling parameters available.

The gNB-DU is responsible for the encoding of NR-MIB. In case broadcast of SIB1 and other SI messages is needed, the gNB-DU is responsible for the encoding of SIB1 and the gNB-CU is responsible for the encoding of other SI messages. The gNB-DU may re-encode SIB9.

To support Msg3 based on-demand SI as described in TS 38.331 [11], the gNB-CU can confirm the received SI request from the UE by including the UE identity, and command the gNB-DU to broadcast the requested other SIs.

–        *SIB1*

*SIB1* contains information relevant when evaluating if a UE is allowed to access a cell and defines the scheduling of other system information. It also contains radio resource configuration information that is common for all UEs and barring information applied to the unified access control.

Signalling radio bearer: N/A

RLC-SAP: TM

Logical channels: BCCH

Direction: Network to UE

**SIB1 message**

```
-- ASN1START
-- TAG-SIB1-START

SIB1 ::=         SEQUENCE {
    cellSelectionInfo            SEQUENCE {
        q-RxLevMin                   Q-RxLevMin,
        q-RxLevMinOffset             INTEGER (1..8)                                   OPTIONAL,   -- Need R
        q-RxLevMinSUL                Q-RxLevMin                                       OPTIONAL,   -- Need R
        q-QualMin                    Q-QualMin                                        OPTIONAL,   -- Need R
        q-QualMinOffset              INTEGER (1..8)                                   OPTIONAL,   -- Need R
                                                                                      OPTIONAL    -- Need S
    cellAccessRelatedInfo        CellAccessRelatedInfo,
    connEstFailureControl        ConnEstFailureControl                               OPTIONAL,   -- Need R
    si-SchedulingInfo            SI-SchedulingInfo                                    OPTIONAL,   -- Need R
    servingCellConfigCommon      ServingCellConfigCommonSIB                           OPTIONAL,   -- Need R
```

---

[8] *See, e.g.,* ETSI TS 138 331 V15.3.0 (2018-10); *see also* ETSI TS 138 331 V16.1.0 (2020-07); *see also* ETSI TS 138 470 V15.7.0 (2020-01); *see also* 3GPP TS 38.331 V15.3.0 (2018-09); *see also* 3GPP TS 38.331 V16.1.0 (2020-07); *see also* 3GPP TS 38.470 V15.7.0 (2019-12).

–        *CellAccessRelatedInfo*

The IE *CellAccessRelatedInfo* indicates cell access related information for this cell.

**CellAccessRelatedInfo** information element

```
-- ASN1START
-- TAG-CELLACCESSRELATEDINFO-START

CellAccessRelatedInfo    ::=         SEQUENCE {
    plmn-IdentityList                PLMN-IdentityInfoList,
    cellReservedForOtherUse          ENUMERATED {true}       OPTIONAL,   -- Need R
    ...,
    [[
    cellReservedForFutureUse-r16     ENUMERATED {true}       OPTIONAL    -- Need R
    npn-IdentityInfoList-r16         NPN-IdentityInfoList-r16 OPTIONAL    -- Need R
    ]]
}

-- TAG-CELLACCESSRELATEDINFO-STOP
-- ASN1STOP
```

–        *NPN-IdentityInfoList*

The IE *NPN-IdentityInfoList* includes a list of NPN identity information.

**NPN-IdentityInfoList** information element

```
-- ASN1START
-- TAG-NPN-IDENTITYINFOLIST-START

NPN-IdentityInfoList-r16 ::=       SEQUENCE (SIZE (1..maxNPN-r16)) OF NPN-IdentityInfo-r16

NPN-IdentityInfo-r16 ::=           SEQUENCE {
    npn-IdentityList-r16               SEQUENCE (SIZE (1..maxNPN-r16)) OF NPN-Identity-r16,
    trackingAreaCode-r16               TrackingAreaCode,
    ranac-r16                          RAN-AreaCode
    cellIdentity-r16                   CellIdentity,
    cellReservedForOperatorUse-r16     ENUMERATED {reserved, notReserved},
    iab-Support-r16                    ENUMERATED {true}
    ...
}

-- TAG-NPN-IDENTITYINFOLIST-STOP
-- ASN1STOP
```

18



39.    The '273 Accused Instrumentalities comprise a base station distributed unit comprising: one or more processors; and memory storing instructions that, when executed by the one or more processors, cause the base station distributed unit to "receive, via the cell, a random access preamble from a wireless device that is associated with the first NPN." For example, the gNB-DU of the '273 Accused Instrumentalities receives on a Physical Random Access Channel (PRACH) (i.e., via the cell) a random access preamble from an NPN-Capable UE (i.e., wireless device) that is associated with the first NPN. An NPN-Capable UE receives a *SIB1* message which indicates that the cell is associated with an NPN and that the cell is an NPN-only Cell. The NPN-Capable UE sends a random access preamble to the gNB-DU in accordance with the random access preamble system information provided in the *SIB1*:[9]

---

[9] *See, e.g.,* ETSI TS 138 304 V16.3.0 (2021-01); *see also* ETSI TS 138 213 V15.3.0 (2018-10); *see also* ETSI TS 138 331 V16.1.0 (2020-07) (showing a *SIB1* message contains a *SI-SchedulingInfo* IE which contains a *SI-RequestConfig* IE which contains a *RACH-ConfigGeneric* IE which is used to specify random-access parameters); *see also* 3GPP TS 38.304 V16.3.0 (2020-12); *see also* 3GPP TS 38.213 V15.3.0 (2018-09); *see also* 3GPP TS 38.331 V16.1.0 (2020-07).

## 5.3    Cell Reservations and Access Restrictions

### 5.3.0    Introduction

There are two mechanisms which allow an operator to impose cell reservations or access restrictions. The first mechanism uses indication of cell status and special reservations for control of cell selection and reselection procedures. The second mechanism, referred to as Unified Access Control as specified in TS 38.331 [3], shall allow preventing selected access categories or access identities from sending initial access messages for load control reasons.

Unified Access Control does not apply to IAB-MTs.

### 5.3.1    Cell status and cell reservations

-   *cellReservedForOtherUse* (IE type: "true")
    Indicated in *SIB1* message. In case of multiple PLMNs indicated in *SIB1*, this field is common for all PLMNs.

When cell broadcasts any CAG-IDs or NIDs and the cell status is indicated as "not barred" and "not reserved" for operator use and "true" for other use, and not "true" for future use:

-   All NPN-capable UEs shall treat this cell as candidate during the cell selection and cell reselection procedures, other UEs shall treat this cell as if cell status is "barred".

## 8    Random access procedure

Prior to initiation of the physical random access procedure, Layer 1 receives from higher layers a set of SS/PBCH block indexes and provides to higher layers a corresponding set of RSRP measurements.

Prior to initiation of the physical random access procedure, Layer 1 receives the following information from the higher layers:

-   Configuration of physical random access channel (PRACH) transmission parameters (PRACH preamble format, time resources, and frequency resources for PRACH transmission).

-   Parameters for determining the root sequences and their cyclic shifts in the PRACH preamble sequence set (index to logical root sequence table, cyclic shift ($N_{CS}$), and set type (unrestricted, restricted set A, or restricted set B)).

From the physical layer perspective, the L1 random access procedure includes the transmission of random access preamble (Msg1) in a PRACH, random access response (RAR) message with a PDCCH/PDSCH (Msg2), and when applicable, the transmission of Msg3 PUSCH, and PDSCH for contention resolution.

## 8.1    Random access preamble

Physical random access procedure is triggered upon request of a PRACH transmission by higher layers or by a PDCCH order. A configuration by higher layers for a PRACH transmission includes the following:

**NPN-only Cell**: A cell that is only available for normal service for NPNs' subscriber. An NPN-capable UE determines that a cell is NPN-only Cell by detecting that the *cellReservedForOtherUse* IE is set to true while the *npn-IdentityInfoList* IE is present in *CellAccessRelatedInfo*.

–        *SIB1*

*SIB1* contains information relevant when evaluating if a UE is allowed to access a cell and defines the scheduling of other system information. It also contains radio resource configuration information that is common for all UEs and barring information applied to the unified access control.

Signalling radio bearer: N/A

RLC-SAP: TM

Logical channels: BCCH

Direction: Network to UE

**SIB1 message**

```
-- ASN1START
-- TAG-SIB1-START

SIB1 ::=          SEQUENCE {
    cellSelectionInfo           SEQUENCE {
        q-RxLevMin                  Q-RxLevMin,
        q-RxLevMinOffset            INTEGER (1..8)                                          OPTIONAL,    -- Need S
        q-RxLevMinSUL               Q-RxLevMin                                              OPTIONAL,    -- Need R
        q-QualMin                   Q-QualMin                                               OPTIONAL,    -- Need S
        q-QualMinOffset             INTEGER (1..8)                                          OPTIONAL     -- Need S
    }                                                                                       OPTIONAL,    -- Cond Standalone
    cellAccessRelatedInfo       CellAccessRelatedInfo,
    connEstFailureControl       ConnEstFailureControl                                       OPTIONAL,    -- Need R


    si-SchedulingInfo           SI-SchedulingInfo                                                        OPTIONAL,    -- Need R
    ServingCellConfigCommon     ServingCellConfigCommonSIB                                               OPTIONAL,    -- Need R
```

–        *SI-SchedulingInfo*

The IE *SI-SchedulingInfo* contains information needed for acquisition of SI messages.

**SI-SchedulingInfo information element**

```
-- ASN1START
-- TAG-SI-SCHEDULINGINFO-START

SI-SchedulingInfo ::=       SEQUENCE {
    schedulingInfoList          SEQUENCE (SIZE (1..maxSI-Message)) OF SchedulingInfo,
    si-WindowLength             ENUMERATED {s5, s10, s20, s40, s80, s160, s320, s640, s1280},
    si-RequestConfig            SI-RequestConfig                                            OPTIONAL,    -- Cond MSG-1
```

–        *SI-RequestConfig*

The IE *SI-RequestConfig* contains configuration for Msg1 based SI request.

```
-- ASN1START
-- TAG-SI-REQUESTCONFIG-START

SI-RequestConfig::=         SEQUENCE {
    rach-OccasionsSI            SEQUENCE {
        rach-ConfigSI               RACH-ConfigGeneric,
        ssb-perRACH-Occasion        ENUMERATED {oneEighth, oneFourth, oneHalf, one, two, four, eight, sixteen}
    }                                                                                                    OPTIONAL,
    si-RequestPeriod            ENUMERATED {one, two, four, six, eight, ten, twelve, sixteen}            OPTIONAL,
    si-RequestResources         SEQUENCE (SIZE (1..maxSI-Message)) OF SI-RequestResources
}
```

21

– RACH-ConfigGeneric

The IE *RACH-ConfigGeneric* is used to specify the random-access parameters both for regular random access as well as for beam failure recovery.

**RACH-ConfigGeneric information element**

```
-- ASN1START
-- TAG-RACH-CONFIGGENERIC-START

RACH-ConfigGeneric ::=             SEQUENCE {
    prach-ConfigurationIndex           INTEGER (0..255),
    msg1-FDM                           ENUMERATED {one, two, four, eight},
    msg1-FrequencyStart                INTEGER (0..maxNrofPhysicalResourceBlocks-1),
    zeroCorrelationZoneConfig          INTEGER(0..15),
    preambleReceivedTargetPower        INTEGER (-202..-60),
    preambleTransMax                   ENUMERATED {n3, n4, n5, n6, n7, n8, n10, n20, n50, n100, n200},
    powerRampingStep                   ENUMERATED {dB0, dB2, dB4, dB6},
    ra-ResponseWindow                  ENUMERATED {sl1, sl2, sl4, sl8, sl10, sl20, sl40, sl80},
    ...,
```

40.     Defendant has committed the foregoing infringing activities without a license.

41.     Peninsula has been damaged as a result of Defendant's infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

42.     Despite having knowledge of the '273 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '273 Patent, Defendant has nevertheless continued its infringing conduct and has disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '273 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Peninsula's rights with respect to the '273 Patent, justifying enhanced damages under 35 U.S.C. § 284.

**COUNT III**
(INFRINGEMENT OF U.S. PATENT NO. 11,570,668)

43.     Plaintiff incorporates the preceding paragraphs herein by reference.

44.     Peninsula is the assignee of the '668 Patent, with ownership of all substantial rights, title, and interest in and to the '668 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

45.     The '668 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on January 31, 2023, after full and fair examination.

46.     Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 1 of the '668 Patent in this District and elsewhere in Texas and the United States through the provisioning and operation of a cellular network and/or by making, using (including by testing in this District and elsewhere in the United States), selling, offering to sell, and/or importing equipment and software that incorporate the fundamental technologies covered by the '668 Patent. Such infringement includes, but is not limited to, the making, using (including by testing in this District and elsewhere in the United States), offering to sell, and selling of cellular services, networks, equipment, products, and/or software that leverage and infringe the inventions of the '668 Patent, and Defendant performing methods covered by the inventions of the '668 Patent. AT&T's 5G cellular network includes core network equipment configured to support 5G communications (collectively, the "'668 Accused Instrumentalities"). The '668 Accused Products are configured to operate, and do operate, according to 3GPP/ETSI standards and, as illustrated below, support and implement handover techniques covered by the '668 Patent.

47.     By way of illustration only, Defendant's '668 Accused Instrumentalities comprise each and every element of claim 1 of the '668 Patent. The '668 Accused Instrumentalities perform "[a] method comprising: sending, by a source access and mobility management function (AMF) to a target AMF, a first message indicating: a handover of a wireless device; and a source session management function (SMF)." *See supra.*, ¶¶ 11-12 (showing AT&T operates a 3GPP 5G network which comprises a core network). For example, the '668 Accused Instrumentalities include a Source Access and Mobility Management Function (S-AMF) sending a *CreateUEContext Request*

message to a Target Access and Mobility Management Function (T-AMF) which indicates the need for a device handover and a Source Session Management Function (SMF), e.g., Source I-SMF:[10]

### 4.9.1.3.2      Preparation phase



**Figure 4.9.1.3.2-1: Inter NG-RAN node N2 based handover, Preparation phase**

---

[10] *See, e.g.,* ETSI TS 123 502 V15.15.0 (2021-09); *see also* 3GPP TS 23.502 V15.15.0 (2021-09).

3.  [Conditional] S-AMF to T-AMF: Namf_Communication_CreateUEContext Request (N2 Information (Target ID, Source to Target transparent container, SM N2 information list, PDU Session IDs), UE context information (SUPI, Service area restriction, Allowed NSSAI for each Access Type and Partially Allowed NSSAI if available, Tracing Requirements, LTE M Indication, the list of PDU Session IDs along with the corresponding SMF information and the corresponding S-NSSAI(s), PCF ID(s), DNN, UE Radio Capability ID and UE Radio Capability Information, N2 Notify URI). If the subscription information includes Tracing Requirements, the old AMF provides the target AMF with Tracing Requirements.

> The S-AMF initiates Handover resource allocation procedure by invoking the Namf_Communication_CreateUEContext service operation towards the target AMF.

48.     The '668 Accused Instrumentalities perform a method comprising "receiving, by the source AMF from the target AMF, a second message causing a release of at least one second session of the wireless device." For example, the T-AMF notifies the S-AMF of the '668 Accused Instrumentalities about a *Namf_Communication_N2InfoNotify* message (i.e., a second message) causing a release of resources (i.e., at least one second session) of the wireless device. In an I-SMF context, the N2 Handover Notify message invokes the release of the SM context of the PDU Session:[11]

---

[11] *See, e.g.,* ETSI TS 123 502 V15.15.0 (2021-09); *see also* ETSI TS 123 502 V16.7.0 (2021-01); *see also* 3GPP TS 23.502 V15.15.0 (2021-09); *see also* 3GPP TS 23.502 V16.7.0 (2020-12).

4.9.1.3.3 Execution phase



6a. [Conditional] T-AMF to S-AMF: Namf_Communication_N2InfoNotify.

The T-AMF notifies to the S-AMF about the N2 handover notify received from the T-RAN by invoking the Namf_Communication_N2InfoNotify.

A timer in S-AMF is started to supervise when resources in S-RAN shall be release.

26



4.23.7.3.3        Execution phase

Case: I-SMF change, step 3 is skipped for I-SMF insertion.

3a. S-AMF to Source I-SMF: Nsmf_PDUSession_ReleaseSMContext Request (I-SMF only indication).

After received N2 handover notify from T-AMF, if indication of I-SMF change/removal has been received, the S-AMF invokes Nsmf_PDUSession_ReleaseSMContext Request to inform the Source I-SMF to release the SM context of the PDU Session. The I-SMF only indication is used to inform the Source I-SMF not to invoke resource release in SMF. The Source I-SMF initiates a timer to release the SM Context of the PDU Session if indirect forwarding tunnel(s) were previously established, or if the Source I-SMF has not received request from Target I-SMF to retrieve SM Context. Otherwise, the Source I-SMF immediately releases the SM Context.

49.    The '668 Accused Instrumentalities perform a method comprising "sending, by the source AMF to the target AMF, a first indication of the completion of the release of the at least one second session." For example, the S-AMF of the '668 Accused Instrumentalities sends an acknowledgment (*Namf_Communication_N2Notify ACK* message) to the T-AMF, which indicates the completion of the release of the second session (PDU Session Release):[12]

---

[12] *See, e.g.,* ETSI TS 123 502 V15.15.0 (2021-09); *see also* 3GPP TS 23.502 V15.15.0 (2021-09).

27

4.9.1.3.3        Execution phase



**Figure 4.9.1.3.3-1: inter NG-RAN node N2 based handover, execution phase**

6b. [Conditional] S-AMF to T-AMF: Namf_Communication_N2InfoNotify ACK (N2 SM Information (Secondary RAT usage data)).

The S-AMF acknowledges by sending the Namf_Communication_N2InfoNotify ACK to the T-AMF. The N2 SM Information here is the one buffered at step 2a0 when applicable.

50.     The '668 Accused Instrumentalities perform a method comprising "sending, by the source AMF to the source SMF, a request for the release of the at least one second session." For example, the S-AMF of the '668 Accused Instrumentalities sends to the Source I-SMF a *Nsmf_PDUSession_ReleaseSMContext Request* message for the release of the at least one second session (a SM context of a PDU session):[13]

---

[13] *See, e.g.,* ETSI TS 123 502 V16.7.0 (2021-01); *see also* 3GPP TS 23.502 V16.7.0 (2020-12).

### 4.23.7.3.3    Execution phase



11a.    S-AMF to Source I-SMF: Nsmf_PDUSession_ReleaseSMContext Request I-SMF only indication.

After received N2 handover notify from T-AMF, if indication of I-SMF change/removal has been received, the S-AMF invokes Nsmf_PDUSession_ReleaseSMContext Request to inform the Source I-SMF to release the SM context of the PDU Session. I-SMF only indication is used to inform the Source I-SMF not to invoke resource release in SMF. The Source I-SMF initiates a timer to release the SM Context of the PDU Session if indirect forwarding tunnel(s) were previously established, otherwise, the Source I-SMF immediately releases the SM Context.

51.    The '668 Accused Instrumentalities perform a method comprising "receiving, by the source AMF from the source SMF, a second indication of completion of the release of the at least one second session." For example, the S-AMF of the '668 Accused Instrumentalities receives a *Nsmf_PDUSession_ReleaseSMContext Response* message from the Source I-SMF, indicating completion of the release of the at least one second session:[14]

---

[14] *See, e.g.,* ETSI TS 123 502 V16.7.0 (2021-01); *see also* 3GPP TS 23.502 V16.7.0 (2020-12).

**4.23.7.3.3    Execution phase**



11b.    Source I-SMF to S-AMF: Nsmf_PDUSession_ReleaseSMContext Response.

52.    Defendant has committed the foregoing infringing activities without a license.

53.    Peninsula has been damaged as a result of Defendant's infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

54.    Despite having knowledge of the '668 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '668 Patent, Defendant has nevertheless continued its infringing conduct and has disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '668 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Peninsula's rights with respect to the '668 Patent, justifying enhanced damages under 35 U.S.C. § 284.

### COUNT IV
(INFRINGEMENT OF U.S. PATENT NO. 11,800,521)

55.    Plaintiff incorporates the preceding paragraphs herein by reference.

56.    Peninsula is the assignee of the '521 Patent, with ownership of all substantial rights, title, and interest in and to the '521 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

57.    The '521 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on October 24, 2023, after full and fair examination.

58.    Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 1 of the '521 Patent in this District and elsewhere in Texas and the United States through the provisioning and operation of a cellular network and/or by making, using (including by testing in this District and elsewhere in the United States), selling, offering to sell, and/or importing equipment and software that incorporate the fundamental technologies covered by the '521 Patent. Such infringement includes, but is not limited to, the making, using (including by testing in this District and elsewhere in the United States), offering to sell, and selling of cellular services, networks, equipment, products, and/or software that leverage and infringe the inventions of the '521 Patent, and Defendant performing methods covered by the inventions of the '521 Patent. AT&T's 5G cellular network includes base station equipment configured to support 5G communications (collectively, the "'521 Accused Instrumentalities"). The '521 Accused Products are configured to operate, and do operate, according to 3GPP/ETSI standards and, as illustrated below, support Non-Public Networks (NPN) uses covered by the '521 Patent.

59.    By way of illustration only, Defendant's '521 Accused Instrumentalities comprise each and every element of claim 1 of the '521 Patent. The '521 Accused Instrumentalities perform "[a] method comprising: sending, by a base station central unit to a base station distributed unit: a cell identifier of a cell; and a first indication that the cell is associated with a first non-public

31

network (NPN)." *See supra.*, ¶¶ 11-12 (showing AT&T operates a 3GPP 5G network which comprises base stations, i.e., Next Generation Node Bs (gNBs)). For example, the '273 Accused Instrumentalities include a base station, i.e., Next Generation NodeB (gNB), that contains a base station central unit (gNB-CU) that sends a *GNB-CU Configuration Update* message to the base station distributed unit (gNB-DU) which includes a NR cell global identity (*NR CGI*) information element (IE) (i.e., a cell identifier) and an *Available SNPN ID List* IE which indicates the available SNPNs for the cell (i.e., the cell is associated with a first NPN):[15]

### 9.2.1.10    GNB-CU CONFIGURATION UPDATE

This message is sent by the gNB-CU to transfer updated information associated to an F1-C interface instance.

> NOTE:    If F1-C signalling transport is shared among several F1-C interface instances, this message may transfer updated information associated to several F1-C interface instances.

Direction: gNB-CU → gNB-DU

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| Message Type | M | | 9.3.1.1 | | YES | reject |
| Transaction ID | M | | 9.3.1.23 | | YES | reject |
| Cells to be Activated List | | 0..1 | | List of cells to be activated or modified | YES | reject |
| >Cells to be Activated List Item | | 1..<maxCellingNBDU> | | | EACH | reject |
| >> NR CGI | M | | 9.3.1.12 | | - | |
| >> NR PCI | O | | INTEGER (0..1007) | Physical Cell ID | - | |
| >> gNB-CU System Information | O | | 9.3.1.42 | RRC container with system information owned by gNB-CU | YES | reject |

---

[15] *See, e.g.,* ETSI TS 138 473 V16.4.0 (2021-01); *see also* 3GPP TS 38.473 V16.4.0 (2021-01).

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| Message Type | M | | 9.3.1.1 | | YES | reject |
| Transaction ID | M | | 9.3.1.23 | | YES | reject |
| >>Available SNPN ID List | O | | 9.3.1.163 | Indicates the available SNPN ID list. If this IE is included, the content of the *Available PLMN List* IE and *Extended Available PLMN List* IE if present in the *Cells to be Activated List Item* IE is ignored. | YES | ignore |

60.     The '521 Accused Instrumentalities perform a method comprising "receiving, by the base station central unit from an access and mobility management function (AMF), a second indication that a wireless device supports the first NPN." For example, the gNB-CU of the '521 Accused Instrumentalities received from an Access and Mobility Management Function (AMF) an *Initial Context Setup Request* message, which contains a *NPN Mobility Information* IE comprising the *Serving NID* IE identifying the Standalone Non-Public Network (i.e., a second indication that the wireless device supports the first NPN):[16]

## 9.2.2.1       INITIAL CONTEXT SETUP REQUEST

This message is sent by the AMF to request the setup of a UE context.

Direction: AMF → NG-RAN node

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| Message Type | M | | 9.3.1.1 | | YES | reject |
| Trace Activation | O | | 9.3.1.14 | | YES | ignore |
| Mobility Restriction List | O | | 9.3.1.85 | | YES | ignore |
| UE Radio Capability | O | | 9.3.1.74 | | YES | ignore |

---

[16] *See, e.g.,* ETSI TS 138 413 V16.7.0 (2021-10) (showing the *Initial Context Setup Request* message contains a *Mobility Restriction List* IE which contains *NPN Mobility Information* IE which contains a *SNPN Mobility Information* IE having a *Serving NID* IE); *see also* 3GPP TS 38.413 V16.7.0 (2021-10).

### 9.3.1.85    Mobility Restriction List

This IE defines roaming or access restrictions for subsequent mobility action for which the NG-RAN provides information about the target of the mobility action towards the UE, e.g., handover, or for SCG selection during dual connectivity operation or for assigning proper RNAs. NG-RAN behaviour upon receiving this IE is specified in TS 23.501 [9].

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| Serving PLMN | M | | PLMN Identity 9.3.3.5 | | - | |
| >Core Network Type Restriction | M | | ENUMERATED (EPCForbidden, 5GCForbidden, …) | Indicates whether the UE is restricted to connect to EPC or to 5GC for this PLMN. | | |
| NPN Mobility Information | O | | 9.3.1.184 | | YES | reject |

### 9.3.1.184    NPN Mobility Information

This IE indicates the access restrictions related to an NPN.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description |
|---|---|---|---|---|
| CHOICE *NPN Mobility Information* | M | | | |
| >SNPN Mobility Information | | | | |
| >>Serving NID | M | | NID 9.3.3.42 | |
| >PNI-NPN Mobility Information | | | | |
| >>Allowed PNI-NPN List | M | | 9.3.3.45 | |

### 9.3.3.42    NID

This IE is used to identify (together with a PLMN identifier) a Stand-alone Non-Public Network.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description |
|---|---|---|---|---|
| NID | M | | BIT STRING (SIZE(44)) | Defined in TS 23.003 [23]. |

61.    The '521 Accused Instrumentalities perform a method comprising "sending, by the base station central unit to the base station distributed unit and based on the second indication, a request for configuration of the cell for the wireless device." For example, the gNB-CU of the '521 Accused Instrumentalities sends a *UE Context Setup Request* message to the base station

distributed unit including the NID from the *Mobility Restriction List* IE (i.e., based on the second indication):[17]

### 9.2.2.1 UE CONTEXT SETUP REQUEST

This message is sent by the gNB-CU to request the setup of a UE context.

Direction: gNB-CU → gNB-DU.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| Message Type | M | | 9.3.1.1 | | YES | reject |
| gNB-CU UE F1AP ID | M | | 9.3.1.4 | | YES | reject |
| gNB-DU UE F1AP ID | O | | 9.3.1.5 | | YES | ignore |
| SpCell ID | M | | NR CGI 9.3.1.12 | Special Cell as defined in TS 38.321 [16]. For handover case, this IE is considered as target cell. | YES | reject |
| Serving NID | O | | 9.3.1.155 | | YES | reject |

### 8.3.1 UE Context Setup

#### 8.3.1.1 General

The purpose of the UE Context Setup procedure is to establish the UE Context including, among others, SRB,DRB, BH RLC channel, and SL DRB configuration. The procedure uses UE-associated signalling.

#### 8.3.1.2 Successful Operation

If the *Serving NID* IE is contained in the UE CONTEXT SETUP REQUEST message, the gNB-DU shall combine the *Serving NID* IE with the *Serving PLMN* IE to identify the serving NPN, and may take it into account for UE context establishment.

### 9.3.1.155 NID

This IE is used to identify (together with a PLMN identifier) a Stand-alone Non-Public Network. The NID is specified in TS 23.003 [23].

| IE/Group Name | Presence | Range | IE type and reference | Semantics description |
|---|---|---|---|---|
| NID | M | | BIT STRING (SIZE(44)) | |

---

[17] *See, e.g.,* ETSI TS 138 473 V16.4.0 (2021-01); *see also* ETSI TS 138 413 V16.7.0 (2021-10); *see also* 3GPP TS 38.473 V16.4.0 (2021-01); *see also* 3GPP TS 38.413 V16.7.0 (2021-10).

### 9.3.1.184    NPN Mobility Information

This IE indicates the access restrictions related to an NPN.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description |
|---|---|---|---|---|
| CHOICE *NPN Mobility Information* | M | | | |
| >*SNPN Mobility Information* | | | | |
| >>Serving NID | M | | NID 9.3.3.42 | |

### 9.3.3.42    NID

This IE is used to identify (together with a PLMN identifier) a Stand-alone Non-Public Network.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description |
|---|---|---|---|---|
| NID | M | | BIT STRING (SIZE(44)) | Defined in TS 23.003 [23]. |

62.    Defendant has committed the foregoing infringing activities without a license.

63.    Peninsula has been damaged as a result of Defendant's infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

64.    Despite having knowledge of the '521 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '521 Patent, Defendant has nevertheless continued its infringing conduct and has disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '521 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Peninsula's rights with respect to the '521 Patent, justifying enhanced damages under 35 U.S.C. § 284.

### CONCLUSION

65.    Peninsula is entitled to recover from Defendant the damages sustained by Peninsula as a result of Defendant's wrongful acts and infringements in an amount subject to proof at trial,

which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

66.    Peninsula has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Peninsula is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

67.    Peninsula hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

68.    Peninsula respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Peninsula the following relief:

(i)    A judgment that one or more claims of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

(ii)    A judgment that AT&T's infringement of the Asserted Patents has been willful;

(iii)    A judgment that Defendant account for and pay to Peninsula all damages and costs incurred by Peninsula because of Defendant's infringing activities and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

(iv)    A judgment that Defendant account for and pay to Peninsula a reasonable, ongoing, post judgment royalty because of Defendant's infringing activities, including continuing infringing activities, and other conduct complained of herein;

(v)     A judgment that Peninsula be granted pre-judgment and post judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

(vi)    A judgment that this case is exceptional under the provisions of 35 U.S.C. § 285 and award enhanced damages; and

(vii)   Such other and further relief as the Court deems just and equitable.

Dated: April 7, 2026

Respectfully submitted,

/s/ Patrick J. Conroy

**Patrick J. Conroy**
Texas Bar No. 24012448
**Ryan P. Griffin**
Texas Bar No. 24053687
**T. William Kennedy Jr.**
Texas Bar No. 24055771
**Jonathan H. Rastegar**
Texas Bar No. 24064043
**Nathan L. Levenson**
Texas Bar No. 24097992
**Brandon G. Moore**
Texas Bar No. 24082372
**NELSON BUMGARDNER CONROY PC**
2727 N. Harwood St., Suite 250
Dallas, TX 75201
pat@nelbum.com
ryan@nelbum.com
bill@nelbum.com
jon@nelbum.com
nathan@nelbum.com
brandon@nelbum.com

**ATTORNEYS FOR PLAINTIFF PENINSULA TECHNOLOGIES, LLC**